# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| THE NEW WORLD BAPTIST CHURCH, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY, KEVIN P. MCLOUGHLIN, AND MICHAEL ROBERT STULL, <br><br> *Defendants*. | Civil Action No. SA-17-CV-00187-XR |

## ORDER

On this date, the Court considered Plaintiff New World Baptist Church's Motion to Abstain and Remand (Docket no. 9). After careful consideration, the court GRANTS the motion and REMANDS this case to state court.

## BACKGROUND

Plaintiff owns a church that is insured under a policy from Defendant Nationwide. Docket no. 1-1 at 4, 6. Defendant Kevin McLoughlin, an insurance agent, sold Plaintiff the policy. *Id*. With respect to the sale of the Policy, Plaintiff alleges that

> Nationwide or its agent, McLoughlin, sold the Policy, insuring the Property, to Plaintiff. Nationwide and/or McLoughlin represented to Plaintiff that the Policy included wind and hailstorm coverage for damage to Plaintiff's business . . . When Plaintiff negotiated the premium amount, McLoughlin represented that the policy Plaintiff purchased provided coverage for hail and wind losses. Unfortunately, Nationwide later represented that the Policy sold by McLoughlin did not afford full coverage. Specifically, the Policy sold by McLoughlin was not a full coverage Policy, but rather, one with specific exclusions. . . . McLoughlin's violations [of the Texas DTPA] include causing confusion as to Policy benefits, and representing that the Policy had benefits or characteristics that it did not possess. . . . McLoughlin is liable to Plaintiff for common law fraud. . . . Specifically, McLoughlin represented to Plaintiff during the sale of the Policy that the Policy had benefits or characteristics it did not possess.

1

Docket no. 1-1 at 6–7, 16–17. Plaintiff adds that the Policy includes a "Cosmetic Damage Waiver," which limits the Policy's coverage of certain wind and hail damage to the church's roof, but that "Defendants never explained to Plaintiff how this exclusion specifically applied to Plaintiff's claim, or limited coverage." *Id*. at 9.

Plaintiff alleges that an April 2016 hailstorm damaged the church and that it submitted a claim to Nationwide. *Id*. at 7. Plaintiff alleges that Defendant Michael Stull, Nationwide's appointed adjuster, and Nationwide conducted a "substandard and improper inspection and adjustment" of the church, which ultimately led to Nationwide denying the claim because it found the damage to the property was subject to the Cosmetic Damage Waiver. *Id*.

Plaintiff filed suit in the 166th Judicial District Court of Bexar County, Texas on February 14, 2017. *Id*. at 4. Plaintiff asserts various causes of action against Nationwide and Stull for their handling of the insurance claim. *Id*. at 11–16, 18–25. Notably for purposes of this order, Plaintiff also asserts causes of action against McLoughlin for violations of the Texas DTPA and fraud based on his conduct in selling Plaintiff the insurance policy. *Id*. at 16–17. Plaintiff seeks over $100,000 in monetary relief. *Id*. at 25.

Defendants removed the action to this Court on March 10, 2017 based on diversity. Docket no. 1. In response to a show cause order from the Court, Defendants filed an amended notice of removal, which alleges that Plaintiff is a Texas corporation with its principal place of business in Texas,[1] Nationwide is an Ohio corporation with its principal place of business in Ohio, Stull is an Iowa citizen, and McLoughlin is a Texas citizen whose citizenship can be disregarded because he has been improperly joined. Docket no. 13 at 2–3. Thus, the existence of diversity jurisdiction in this case depends on whether McLoughlin has been improperly joined.

---

[1] Plaintiff identifies itself as an LLC in its original complaint, but Defendants' amended notice of removal states that on information and belief, Plaintiff is in fact organized as a corporation. Docket no. 13 at 2–3.

## DISCUSSION

**I. Standard of Review**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). On motion to remand, the court must consider whether removal was proper. In order for removal to be proper, a district court must have original jurisdiction over the removed action. *See id.*

Federal district courts have original jurisdiction over civil actions if the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). There is no dispute that the amount in controversy exceeds $100,000, nor is there currently a dispute over the citizenship of the parties.[2]

There are two ways to establish improper joinder: "(1) the plaintiff *has* stated a claim against a diverse defendant that he fraudulently alleges is non[-]diverse, or (2) the plaintiff *has not* stated a claim against a defendant that he properly alleges is non[-]diverse." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016) (citing *Smallwood v. Ill. Cert. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)) (emphasis original). Because McLoughlin is non-diverse, only the second type of improper joinder is at issue, and the Court must determine whether Plaintiff has stated a cause of action against McLoughlin under the applicable improper joinder standard. *See id.*

The burden of demonstrating improper joinder is a heavy one and is placed on the party seeking removal. *See McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005). In order to meet this burden, the removing party must show that there is no reasonable basis to predict that

---

[2] At a May 11, 2017 status conference, Plaintiff's counsel indicated that she was unsure whether her client was organized as an LLC or a corporation. *See supra* footnote 1 and accompanying text. Plaintiff's counsel did not contest the assertion her client was organized as a corporation, but stated that she would examine that assertion in and revise the pleadings if necessary.

the plaintiff might be able to recover against a non-diverse defendant. *See Int'l Energy*, 818 F.3d at 199; *see also Smallwood*, 385 F.3d at 573 ("[T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant.").

The Fifth Circuit requires that "decisions about removal . . . be made on the basis of federal law, not state law"; therefore, courts use a Rule 12(b)(6)-type analysis when determining whether a plaintiff may reasonably recover. *Int'l Energy*, 818 F.3d at 202; *see Smallwood*, 385 F.3d at 573 ("If a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."). Further, the court must resolve "all . . . factual allegations," "all contested issues of substantive fact," and "all ambiguities in the controlling state law" in the plaintiff's favor. *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005) (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)) (internal quotation marks omitted). In other words, "any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

## II. Application

The Fifth Circuit has recognized that under the Texas DTPA, "a sales agent may be individually liable when the agent misrepresents specific policy terms prior to a loss, and the insured's reliance upon that misrepresentation actually causes the insured to incur damages." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999). In *Griggs*, the court affirmed the district court's denial of a motion to remand based on the improper joinder of an insurance agent by distinguishing "non-actionable puffery" from "actionable representations of specific material fact." *Id.* at 701–02. The insurance agent's statements in that case, which the court classified as "non-actionable puffery," were that "[the insurer] would provide timely and professional service, and that she, [the agent], would personally handle any questions or problems that might arise." *Id.* at 700.

The crux of Plaintiff's allegations against McLoughlin is that he "represented to Plaintiff that the Policy included wind and hailstorm coverage for damage to Plaintiff's business . . . When Plaintiff negotiated the premium amount, McLoughlin represented that the policy Plaintiff purchased provided coverage for hail and wind losses. Unfortunately, Nationwide later represented that the Policy sold by McLoughlin did not afford full coverage. Specifically, the Policy sold by McLoughlin was not a full coverage Policy, but rather, one with specific exclusions." Docket no. 1-1 at 6–7. The Court reads the complaint as alleging that when McLoughlin sold the Policy to Plaintiff, he affirmatively stated that it would provide full coverage for any and all wind and hail losses.[3]

Reading the complaint as such and comparing it to statements made by insurance agents in previous cases, Plaintiff's allegations go beyond the "non-actionable puffery" described in *Griggs* and are "actionable representations of specific material fact." In terms of what constitutes an "actionable representation[ ] of specific material fact," *Hernden v. State Farm Lloyds* is illustrative. Case No. SA-05-CA-1103-RF, 2006 WL 870663, at *3 (W.D. Tex. Mar. 2, 2006). There, an insurance agent represented that "the homeowner's insurance policy [the plaintiffs] were buying included '100% mold coverage' and that any losses incurred in the home due to mold would be '100% covered' by the policy." *Id*. The court, distinguishing *Griggs*, granted the plaintiffs' motion to remand over State Farm's improper joinder argument because the "[p]laintiffs . . . alleged facts sufficient to demonstrate there is a possibility of recover [sic] under . . . the [DTPA]." *Id.*; *see also Lexington Ins. Co. v. Buckingham Gate, Ltd., Inc.*, 993 S.W.2d 185, 195 (Tex. App.—Corpus Christi 1999, pet. denied) (affirming a jury verdict against an

---

[3] To the extent that Plaintiff seeks to hold McLoughlin liable for "never explain[ing] to Plaintiff how [the Cosmetic Damage Waiver] specifically applied to Plaintiff's claim, or limited coverage," Defendants are correct. There is no reasonable basis to predict that Plaintiff might be able to recover against McLoughlin on this theory because Texas law does not impose a duty on insurance agents to explain policy terms, though they may be liable for making affirmative misrepresentations. *See Glenn v. L. Ray Calhoun & Co.*, 83 F. Supp. 3d 733, 749 (W.D. Tex. 2015) (citing *Ruiz v. Gov't Employees Ins. Co.*, 4 S.W.3d 838, 841 (Tex. App.—El Paso 1999, no pet.)). Beyond this theory, though, Plaintiff alleges that McLoughlin affirmatively misrepresented the nature of the coverage provided by the Policy.

insurance broker on a DTPA claim as supported by the evidence based on representations that "they would cover all risks, anything that could happen, everything that [plaintiff] needed they would take care of" when in fact the policy contained certain exclusions).

On the opposite end of the spectrum from "actionable representations of material fact" are examples of "non-actionable puffery." *Griggs* itself provides one example—statements that "[the insurer] would provide timely and professional service, and that she, [the agent], would personally handle any questions or problems that might arise" were found to be non-actionable puffery. 181 F.3d at 700. Similarly, in *Garza v. State Farm Lloyds*, the court found that an insurance agent's representations were non-actionable puffery when he said that State Farm was "a quality insurance company, a reputable insurance company, with few complaints" and that "State Farm would pay Plaintiffs fairly for damage to the property in the event of a claim." Case No. 7:13-CV-112, 2013 WL 3439851, at *5 (S.D. Tex. July 8, 2013). And in *Vaughan v. State Farm Lloyds*, the court found that where an insurance agent "constantly assured Plaintiff that they were adequately insured even though a reasonable and prudent insurance agent would testify otherwise" and "misrepresented to Plaintiff that the insured person was covered by such peril although [State Farm] denied such coverage," these statements were non-actionable puffery because they did not related to a specific policy provision.[4] Case No. MO-15-CA-17, 2015 WL 13134509, at *2 (W.D. Tex. Aug. 5, 2015). Of all the cases cited by Defendants, *State Farm Cty. Mut. Ins. Co. of Tex. v. Moran,* 809 S.W.2d 613, 620–21 (Tex. App.—Corpus Christi 1991, writ denied) is the closest analog in terms of the agent's statements, but it is distinct because it dealt

---

[4] *Compare, e.g., Fredrichs v. Time Ins. Co.*, 407CV12, 2007 WL 1624310, at *2 (E.D. Tex. June 1, 2007), *report and recommendation adopted*, 4:07-CV12, 2007 WL 1795697 (E.D. Tex. June 20, 2007) ("[A]lthough [plaintiff], in his motion to remand, has stated that [the agents] made misrepresentations that the policy had characteristics and benefits it did not have, he does not elaborate on the sort of characteristics and benefits that were misrepresented. Indeed, his 'specific' allegations are essentially a verbatim recital of the statutory provisions of the Texas Deceptive Trade Practices Act. Such vague, factually unsupported references to 'misrepresentations made by the [agents]' do not state a valid cause of action against an individual insurance agent and are insufficient to support a motion for remand.") *with e.g., State Farm Fire & Cas. Co. v. Gros*, 818 S.W.2d 908, 912 (Tex. App.—Austin 1991, no writ) (affirming jury's verdict in favor of homeowners against an insurance agent who made specific misrepresentations concerning the scope of coverage afforded by a specific policy term related to mudslides).

with the sufficiency of the evidence to support a jury verdict against an insurance agent (not with the adequacy of the pleadings), and it interpreted an industry-specific statement about a particular type of policy not at issue here.[5]

A third type of statement that does not fit neatly on the spectrum between puffery and actionable misrepresentation of fact is an insurance agent's statement that is true. Because a true statement of fact is not a misrepresentation at all, courts have found that such statements cannot form the basis for an agent's liability. In *Garza*, aside from saying that State Farm was a reputable company that would pay claims fairly, the insurance agent also "represented to Plaintiffs that damages like what the Property sustained from hail and wind would be covered by the Policy." 2013 WL 3439851 at *5. The court recognized that this representation was "more specific" than the others that it found to be non-actionable puffery, but nevertheless held that there was no reasonable basis to predict that the plaintiffs could recover based on this representation because "the record demonstrate[d] that it was not a misrepresentation." *Id*. In particular, the court noted that the policy at issue actually did cover *some* hail and wind damage. *Id*.; *see also Burton v. State Farm Mut. Auto. Ins. Co.*, 869 F. Supp. 480, 486 (S.D. Tex. 1994), *aff'd*, 66 F.3d 319 (5th Cir. 1995) (finding that plaintiffs did not allege that an insurance agent misrepresented policy terms by "[telling] them that the policy met the requirements of the Texas

---

[5] Of all the cases cited by Defendants, *State Farm Cty. Mut. Ins. Co. of Tex. v. Moran,* 809 S.W.2d 613, 620–21 (Tex. App.—Corpus Christi 1991, writ denied) is the closest analog, but it too is distinct. There, a jury found in favor of the plaintiff on his DTPA claims against State Farm for misrepresenting the terms of an auto policy by representing that the plaintiff had "full coverage" when he actually did not. *Moran*, 809 S.W.2d at 620. The appellate court reversed because there was no evidence to show that State Farm made any misrepresentations— "State Farm simply represented the policy to be 'full coverage,' a term of art within the insurance industry to describe a certain level of automobile insurance coverage. The evidence does not show that State Farm misrepresented what it meant by full coverage or that [the plaintiff] received anything less than a full coverage policy." *Id*. at 621.

As noted, *Moran* is distinct from this case for two main reasons. First, it was decided on the sufficiency of the evidence presented at trial, not on the basis of the plaintiff's allegations; in other words, the *Moran* plaintiff's claim failed because he presented no evidence to support it, *not* because he did not state a claim. Second, the court's decision was based on an industry-specific interpretation of the phrase "full coverage" within an auto insurance policy.

Safety Responsibility Act" when the policy did in fact meet the Act's requirements when it was issued).

The Court finds that there is a reasonable basis to predict that Plaintiff might be able to recover against McLoughlin based on the allegations in the complaint. The misrepresentations that the complaint attributes to McLoughlin specifically address the comprehensive nature of the wind and hail coverage provided by the specific wind and hail provisions of the Policy. As such, these are actionable representations of material fact, like the insurance agent's representations of "100% coverage" in *Hernden* and unlike the vague assurances of coverage for "such peril" in *Vaughan*. Furthermore, these alleged representations are distinct from instances of "non-actionable puffery," which relate to, for example, the reputation of an insurance company or the adequacy of coverage in the agent's opinion. Finally, because the Court reads Plaintiff's complaint as alleging that McLoughlin represented that the Policy provided truly full and unlimited coverage for wind and hail damages, this statement is misrepresentation rather than a true factual statement since the Policy provided something less than what McLoughlin allegedly said it did. For these reasons, the non-diverse McLoughlin is not improperly joined, and this case must be remanded.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand (Docket no. 9) is GRANTED. This case is hereby REMANDED to the state court.

It is so ORDERED.

SIGNED this 12th day of May, 2017.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE